FILED
United States Court of Appeals
Tenth Circuit

November 9, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BARBARA SCRUGGS,

      Plaintiff-Appellant,

v.

EXXONMOBIL PENSION PLAN and
EXXONMOBIL SAVINGS PLAN,

      Defendants-Appellees.

No. 08-6145

---

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 06-cv-00465-F)**

---

Babette Patton, Breathwit & Patton, P.C., Oklahoma City, OK, for Appellant.

Michael S. Beaver (Catherine C. Crane with him on brief) of Holland & Hart LLP, Greenwood Village, CO, for Appellees.

---

Before **HENRY**, Chief Circuit Judge, and **SEYMOUR** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      Plaintiff-Appellant Barbara Scruggs performed secretarial services for

ExxonMobil for twenty-two years until her office in Oklahoma was closed in

2005. After the office closed, she filed this action pursuant 29 U.S.C.

§ 1132(a)(1), seeking retroactive pension and savings benefits allegedly owed to her under two ExxonMobil employee benefits plans, ExxonMobil Pension Plan and ExxonMobil Savings Plan (collectively "the Plans").[1]  Because Scruggs performed her services for ExxonMobil as an independent contractor or while on the payroll of third-party companies, the plan administrator denied her claim for benefits because, inter alia, she was ineligible for benefits under the Plans.  The district court granted summary judgment for the Plans on the basis that Scruggs's action was untimely and, alternatively, upheld the administrator's decision as not arbitrary and capricious.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm on the basis that the administrator's denial of benefits was not arbitrary and capricious.

## I. BACKGROUND

Barbara Scruggs worked as a Secretary in the Hennessey, Oklahoma, office of ExxonMobil[2] for twenty-two years until the office closed in 2005.  During the entire time she worked at the Hennessey facility, Scruggs never was on ExxonMobil's payroll.  Instead, she was paid for her services by a third-party

_____

[1]Scruggs has since abandoned her claim for benefits from the Savings Plan; therefore, we will only consider her claim for benefits from the Pension Plan.

[2]In 1983, when Scruggs began working at the Hennessey facility, the facility was operated by Exxon Corporation.  In 1999, Exxon Corporation merged with Mobil Corporation, and the surviving entity is ExxonMobil Corporation ("ExxonMobil").  To the extent that the name "ExxonMobil" is used throughout this opinion with respect to any date or period before 1999, the actual entity at the time would have been Exxon Corporation.

contractor or was paid directly by ExxonMobil as an independent contractor.[3] In 1986, Scruggs attempted to get hired directly by Exxon, but Exxon decided not to put her on the payroll.

A. Ms. Scruggs's Claim

On August 2, 2005, Scruggs sent a letter to ExxonMobil claiming that she "acted in the capacity of an employee [of ExxonMobil] for 22 years and therefore [was] entitled to compensation" under Exxon's employee benefit plans. (Aplt. App. 37.) ExxonMobil's Human Resources office denied Scruggs's request for benefits, explaining that Scruggs was "not an eligible person as defined under any of the ExxonMobil benefit plans,"—i.e., not a "'covered employee' under the various ExxonMobil benefit plans"—and therefore she was "not entitled to any benefits." (Id. at 42.)

---

[3]From January 1983 until December 1993, Exxon contracted with Western Tank Truck ("WTT") for Scruggs's services at the Hennessey office. In 1993, Scruggs claimed that Exxon requested she contract directly with Exxon instead of going through WTT. As a result, from December 1993 until January 1999, Scruggs, in her words, "contracted directly" with Exxon. (Aplt. App. 36.) She invoiced Exxon for her services, and each year she received a Form 1099 from Exxon. Beginning in February 1999, Scruggs resumed working pursuant to an agreement between Exxon and an independent contracting company, JaiCo. A company known as American Measurement Services ("AMS") assumed responsibility for JaiCo's obligation in 2003, along with its contract with Exxon.

Scruggs received at least some employee benefits from the third-party contractors, including compensation for holidays and vacations. However, the record does not indicate whether she also received any health, disability, life or retirement benefits from these contractors.

Scruggs appealed this decision to the plan administrator, Douglas F. Garrison, who denied Scruggs's appeal, determining that Scruggs was excluded from participation under the plans because she was a "special-agreement person." (Id. at 31-32.) A "special-agreement person" was defined under the plan as, inter alia, a person "working for [ExxonMobil] pursuant to an agreement between [ExxonMobil] and a non-affiliated organization that pays the person's salary or wages, or [a person] employed by [ExxonMobil] under a written agreement with the person that specifically excludes the person from coverage for benefits." (Id. at 32.) The plan administrator determined that Scruggs met this definition because during the entire time she performed services for Exxon she either "worked for ExxonMobil pursuant to agreements between ExxonMobil and two non-affiliated organizations that paid her wages" or she "worked for ExxonMobil as an independent contractor," and "[u]nder ExxonMobil's standard procurement process, all independent contractors enter into a standard-form written agreement that specifically excludes the person from coverage for benefits." (Id. at 32.) Thus, the plan administrator concluded that Scruggs was a "special-agreement person" and, therefore, excluded from the definition of a "covered employee" under the plans.

B. Ms. Scruggs's Lawsuit

On April 26, 2006, Scruggs brought this action under section 502(a)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

- 4 -

§ 1132(a)(1), to recover benefits allegedly owed to her under two employee benefits plans, ExxonMobil Pension Plan and ExxonMobil Savings Plan. The Plans moved for summary judgment, but the district court denied the motion, concluding that the plan administrator's decision was conclusory and did not adequately explain the grounds for its decision.

Given that the plan administrator's decision failed to make adequate findings and explain the grounds for determination, the district court subsequently ordered "a remand for the limited purpose of the plan administrator's *de novo* reconsideration of plaintiff's claim for benefits, based on the existing administrative record." (Aplt. App. 214.) The court also allowed the parties to supplement the administrative record with the pertinent legally operative plan documents and any evidence that the parties specifically agreed to.

On remand, the plan administrator once again denied Scruggs's claim. In an eleven-page letter, the administrator explained that Scruggs was not a "covered employee" eligible to participate in the Plans, because she was never on ExxonMobil's payroll. Alternatively, the administrator explained that she was excluded from participation in the Plans because she was a "Special-Agreement Person" as defined in the Plan documents. And, even if she was eligible to participate in the Plans, she had not accrued any benefits under the Plans. In sum, the plan administrator concluded that "[f]undamentally, Ms. Scruggs' complaint is not with the administration of the Plans, but with the actions of the employer in

not offering her a position on the payroll or establishing benefit plans to cover long-term contractors." (Id. at 465.)

Scruggs returned to federal court, filing an amended complaint in the district court, and both parties moved for summary judgment. On June 30, 2008, the district court issued an order granting summary judgment in favor of the Plans because Scruggs's claim was untimely. The court explained that because she "knew or should have known that she was classified by ExxonMobil as a contract employee as to whom ExxonMobil repudiated any entitlement to . . . ERISA benefits" more than five years before she filed this claim, Scruggs's claim was barred by the applicable statute of limitations. (Id. at 550.) Alternatively, the court concluded that Plan Administrator's decision denying benefits was not arbitrary and capricious. This appeal by Scruggs followed.

## II. DISCUSSION

Scruggs asserts that the district court erred because her action was timely and because the plan administrator's denial was an abuse of discretion. We hold that the plan administrator's denial of benefits on the ground that Scruggs was not a "covered employee" was not arbitrary and capricious. Therefore, we need not reach Scruggs's challenge to the district court's statute-of-limitations ruling.

We recognize that Scruggs asserts that on remand the plan administrator impermissibly provided additional reasons for the denial of her claim. Specifically, Scruggs argues that we should not rely on the administrator's

- 6 -

determination that Scruggs was not eligible for benefits as a "covered employee" because she was not on ExxonMobil's payroll, since this argument was not advanced in the administrator's initial denial of her appeal. However, Scruggs's argument is completely without merit.

The district court is vested with discretion to remand a case to the plan administrator for a renewed evaluation of the claimant's case. See Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1194 (10th Cir. 2007) (where the "administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case"), abrogated on other grounds by Holcomb v. Unum Life Ins. Co. Of Am., 578 F.3d 1187, 1192-93 (10thCir. 2009); see also Tate v. Long Term Disability Plan for Salaried Employees of Champion Int'l Corp. #506, 545 F.3d 555, 563 (7th Cir. 2008) (remand is appropriate when "the Plan did not provide adequate reasoning for its conclusion"). Here, utilizing this discretion, the district court remanded to the plan administrator for "*de novo* reconsideration . . . based on the existing administrative record." (Aplt. App. 214.) Therefore, the plan administrator was specifically authorized by the district court to present alternate reasons for denial in its re-evaluation of plaintiff's claims. Scruggs's assertion that the purpose of the remand order was only "to give the Plan Administrator the opportunity to make factual findings supported in detail" (Aplt. Br. at 25) conflicts with the plain language of the remand order,

and, importantly, the district court did not interpret its own order in such a limited fashion when the case returned to it—indeed, it considered this "new" argument in its review of the administrator's decision.[4]

A. Standard of Review

"We review summary judgment orders de novo." Weber v. GE Group Life Assurance Co., 541 F.3d 1002, 1010 (10th Cir. 2008). The Supreme Court has provided that the proper standard of review when a denial of benefits is challenged under 29 U.S.C. § 1132(a)(1)(B) depends largely upon whether "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where a plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits, "we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." Weber, 541 F.3d at 1010 (citation and quotation omitted). However, "[i]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that

---

[4] Furthermore, we also reject Scrugg's argument insofar as Scruggs appears to assert that the district court was not authorized to allow the plan administrator to assert additional reasons for denial on remand. We decline Scruggs's invitation to find any equivalence between the unremarkable proposition that a plan may not assert new grounds for its decision on appeal that it did not assert in it its original administrative denial, see Flinders, 491 F.3d at 1191, and her argument that the district court can not remand a claim for an administrator's *de novo* review.

- 8 -

conflict must be weighed as a factor in determining whether there is an abuse of discretion." Metro. Life Ins. Co. v. Glenn, — U.S. —, 128 S. Ct. 2343, 2348 (2008) (internal quotation marks, emphasis omitted) (quoting Firestone, 489 U.S. at 115). "To incorporate this factor, we have crafted a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but [will] decrease the level of deference given . . . in proportion to the seriousness of the conflict." Weber, 541 F.3d at 1010 (internal citations and quotations omitted).

Here, the Plan documents explicitly state that the Plan Administrator "shall be vested with full and final discretionary authority to determine eligibility for benefits, [and] to construe and interpret the terms of the core benefit plans in their application to any participant or beneficiary." (Aplt. App. 318 (emphasis omitted.)) The Plans thereby retained discretionary authority, which triggers the court's arbitrary-and-capricious standard of review. As the Plan Administrator is also an employee of ExxonMobil, he operates under a conflict of interest in this case. See Weber, 541 F.3d at 1011. Accordingly, the Court will still employ the arbitrary-and-capricious standard, but it will weigh the Plan Administrator's conflict of interest as a factor in determining the lawfulness of the benefits denial. Id.[5] In reviewing the administrator's decision we will only consider "the

---

[5] In evaluating the relevance of an administrator's or fiduciary's conflict of interest, the Supreme Court has counseled that "[i]t should prove less important

(continued...)

administrative record—the materials compiled by the administrator in the course of making his decision." <u>Weber</u>, 541 F.3d at 1011 (quotation omitted).

B. <u>The Plan Administrator's Interpretation of the Plan</u>

"When reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious." <u>Id.</u> (internal quotation marks, alterations omitted) (quoting <u>Flinders</u>, 491 F.3d at 1190). "We make that determination based on the language of the plan." <u>Id.</u>

---

[5](...continued)
(perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." <u>Glenn</u>, 128 S. Ct. at 2351. The Plans argue, relying on a declaration from the plan administrator, that here the administrator's conflict of interest should be minimally weighed because (a) his job performance is not assessed with respect to whether he grants or denies claims, (b) no aspect of his compensation has ever related in any way to his decisions in granting or denying claims, and (c) there would be little financial incentive to deny the claim because the additional cost of Scruggs's claim to the Plan is miniscule. Scruggs, however, objects to this declaration, because she claims that the consideration of the declaration violates the district court's order to not expand the administrative record after remand was ordered. Scruggs, by failing to raise this objection before the district court, waived this argument. <u>See</u> <u>Wilburn v. Mid-South Health Dev., Inc.</u>, 343 F.3d 1274, 1280 (10th Cir. 2003) ("An issue is waived if it was not raised below in the district court."). Although we conclude that there still remain some conflict of interest, the relative independence of the actual administrator mitigates the conflict of interest somewhat, leaving us with a weakened, but still existent, arbitrary-and-capricious standard of review.

- 10 -

Where the plan administrator's decision relies on an interpretation of the language in the plan, as it does here, we begin by considering whether the provision is ambiguous; if the plan documents, examined as a whole, are "unambiguous, we construe them as a matter of law." Id. (internal quotations omitted). "'Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term.'" Miller v. Monumental Life Ins. Co., 502 F.3d 1245, 1250 (10th Cir. 2007) (quoting Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v.Willard, 393 F.3d 1119, 1123 (10th Cir. 2004)). In order to determine whether the plan is ambiguous, "we 'consider the common and ordinary meaning as a reasonable person in the position of the plan participant . . . would have understood the words to mean.'" Weber, 541 F.3d at 1011 (quoting Miller, F.3d at 1250) (further quotation, emphasis omitted).

If a plan provision is ambiguous, under the arbitrary and capricious standard, then we "take a hard look and determine" whether the plan administrator's interpretation of the ambiguous language was "arbitrary in light of [the administrator's] conflict of interest." Id. (internal quotation omitted). However, "if the plan provision is unambiguous, and the plan administrator's interpretation differs from the unambiguous meaning, then the plan administrator's interpretation is unreasonable, and the decision to deny benefits

based on that interpretation is arbitrary and capricious." Flinders, 491 F.3d at 1193.

     1. *The Plan is Ambiguous*

The ExxonMobil Pension Plan[6] provides that generally "a person acquires a matured right to a Pension Benefit" at the time of termination if "the person was a covered employee" and the person has completed sufficient years of service.[7] (Aplt. App. 84.). The Common Provisions[8] applicable to the Pension Plan define a "covered employee," in general, as a "qualifying employee . . . of a participating employer." (Id. at 302 (emphasis omitted.)) The definitions of "qualifying employee" and "participating employer" incorporate further definitions: a "qualifying employee" is defined, in general, as "any employee of a participating employer who . . . is both a regular employee and a domestic-type

---

[6] There were several iterations of the pension plan that were in effect at various times during the time of Scruggs's service at the Hennessey facility. The plan that is currently in effect (and named as the defendant in this case) is the 2002 ExxonMobil Pension Plan. The 2002 Pension Plan restated and subsumed the previous versions of the applicable plans.

[7] A person may also be eligible for pension benefits if he or she is a "non-regular employee." (Aplt. App. 84.) A non-regular employee is generally an employee "who otherwise would be a covered employee but for the fact . . . that the person does not regularly work a full-time schedule or is employed on a temporary basis." (Id. at 311.) Scruggs does not contend that she falls under the definition of a "non-regular employee."

[8] Although the Common Provisions in the record were revised after the date Scruggs filed her claim, she does not object to their consideration in interpreting the pivotal term "covered employee."

employee"[9] (Id. at 312-13); and a "participating employer" is, in general, ExxonMobil and any "service-oriented employer" that has elected to participate in one or more of the benefit plans.[10] (2 Aplt. App. 311.) Therefore, ultimately, a "covered employee" is, generally, a full-time employee of ExxonMobil who is compensated in U.S. Dollars and is regularly stationed in the United States or Canada.

Despite all of these definitions, the pivotal term "employee" is never specifically defined, and neither was the term defined in any previous version of

---

[9] Proceeding with the definitions within definitions, a regular employee is further defined as "an employee of a participating employer . . . who . . . regularly works a full-time schedule" (Aplt. App. 313 (emphasis omitted)), and a "domestic-type employee" is a "regular employee . . . whose rate of compensation is fixed in U.S. Dollars and . . . is regularly stationed in the United States or Canada" (Id. at 303 (emphasis omitted)).

Also, the Common Provisions provide that the definition of a "[q]ualifying employee" does not include barred employees, special-agreement persons, or leased employees. (Id. at 312-13.) A "special agreement person," in pertinent part, is a

person . . . (B) working for a participating employer pursuant to an agreement between the participating employer and a non-affiliated organization that pays the person's salary or wages; or

(C) employed by a participating employer under a written agreement with the person that specifically excludes the person from coverage for benefits.

(Id. at 316 (emphasis omitted.))

[10]Scruggs does not argue that the third-party contractors, who paid her wages when she worked at the Hennessey facility, had elected to participate in any ExxonMobil benefit plans.

- 13 -

the Plans.  (The Plan asserts that only a person who was on ExxonMobil's payroll meets the definition of an "employee" under the benefit plans (Aple. Br. at 44); to the contrary, Scruggs argues that the term "employee" has a broader scope that reaches common-law employees, as defined under <u>Nationwide Mutual Insurance Co. v. Darden</u>, 503 U.S. 318 (1992), and possibly extends still more widely.[11]  To be sure, each of the interpretations proposed by the parties is plausible, and the benefit plans neither specifically include nor exclude common-law employees.

Furthermore, a holistic reading of the plan documents is equivocal.  On the one hand, the plan documents' specific exclusion of certain individuals who would not be on ExxonMobil's payroll, such as "leased employees" and some "special-agreement person[s]," could imply that absent the exclusion they might fall under the definition of a "qualifying employee" even though they were not on ExxonMobil's payroll.  On the other hand, the plan documents at least suggest that a person who is not paid through the "established wage or salary system," i.e., the payroll system, could not accrue any benefits.[12]  (Aplt. App. 307.)  It

---

[11]It is unclear exactly how Scruggs interprets the word "employee" other than to assert that she was an employee of ExxonMobil for twenty-two years. Scruggs rejects the Plans' attempt to limit her argument to claiming that the term "employee" is defined as a common-law employee—which she claims she was while she performed services for ExxonMobil—but she does not appear to explain what exactly is the broader definition she advances.

[12]Under the Pension Plan, a person's "monthly benefit pay" is determined based on a person's "monthly pensionable pay." (Aplt. App. 305.)  A person's "monthly pensionable pay" is composed of the greater of "the amount of the
(continued...)

would make little sense to characterize as a "covered employee" a person who is not eligible to receive benefits because he or she was not on the payroll. Because the term "employee" is ambiguous and the plan documents as a whole do not establish a definitive interpretation, it is appropriate to proceed to consider the reasonableness of the administrator's exercise of his interpretive discretion.

### 2. *Plan Administrator's Decision*

The plan administrator concluded that the word employee "was never intended as a legal term of art, but simply as a reference to persons that ordinary businessmen consider to be employees — that is, those on the payroll — as distinct from persons that ordinary businessmen would consider to be contractors, because that is how they are designated and treated in [ExxonMobil's] systems." (Id. at 457.)

The administrator supported his decision with reference to several factors. First, "the design of [ExxonMobil's] benefits administration processes as they have existed for many years" supported the fact that the pension plan was only intended to cover employees on ExxonMobil's payroll. (Id.) The administrator explained that "[c]ontractors, including individual contractors, are paid through

_____

[12](...continued)
person's straight time base pay . . . or the amount that is actually paid for base pay . . ." and "the sum of other components of pay that are actually paid to the person that are part of the established wage or salary system." (2 Aplt. App. 306-07 (emphasis added).) Therefore, without any pay through the established wage or salary system, an individual can not accrue any pension benefits.

- 15 -

accounts payable on the basis of invoices submitted, not through the payroll system. However, only the payroll system has the interfaces and recordkeeping capabilities to track employee information essential to the administration of benefits." (Id.) For instance, only the payroll system can track elections and collect medical premiums, and savings plan contributions. Also, the payroll system tracks hours of service and hours of leave, which applies to the vesting rules and the amount of benefits accrued under the Pension Plan. Accordingly, "it is completely impractical to provide benefits to persons who receive payments through accounts payable, rather than through the payroll system." (Id. at 458.) And this inability to track pay to determine the amount of the benefit would be even more complicated when a person claiming eligibility for benefits was in fact paid by an outside vendor.

Additionally, the administrator explained that "[f]urther evidence of the fact that only persons on the payroll are intended to be covered by the Plans is the fact that benefits communications, such as periodic benefit statements and enrollment materials, are provided only to persons who are (or were) on the payroll." (Id.) Finally, the plan administrator explained that during his thirty-year career in human resources at ExxonMobil he was not "aware of a case in which a person hired as an independent contractor or an employee of a third party providing services to [ExxonMobil] was provided benefits under [ExxonMobil's] plans." (Id.)

- 16 -

Therefore, the plan administrator concluded that "because [Scruggs] was not an employee within the meaning of that term as used in the Plans" she was not eligible for benefits under the Plans. (Id.)

3. *The Plan Administrator's Interpretation Was Not Arbitrary and Capricious*

The plan administrator interpreted the term "employee" as limited to individuals on ExxonMobil's payroll, a category that does not include all persons who might be considered employees under ERISA. Thus, the administrator considered it irrelevant whether Scruggs had in fact been a common-law employee of ExxonMobil.[13]  "ERISA does not prohibit an employer from distinguishing between groups or categories of employees" in this way by "providing benefits for some but not others."  Bronk v. Mountain States Tel. & Tel., Inc., 140 F.3d 1335, 1338 (10th Cir. 1998).  Here, we conclude that the administrator's interpretation of the plan documents, distinguishing between persons who are or are not on ExxonMobil's payroll, was not arbitrary and capricious.

As we previously noted, the plan documents do not define the word "employee."  Consequently, in reaching his decision, the plan administrator

_____

[13]Additionally, the administrator explained, "Ms. Scruggs has not presented the kind of detailed information that would be required to determine whether Ms. Scruggs meets the definition of an 'employee' under common law principles." (Aplt. App. 457.)

- 17 -

engaged in an analysis of the structure of the benefits administration system, the inability to track or determine benefits if a potential claimant was paid through accounts payable as an independent contractor or through an outside third-party contractor; he then determined that ExxonMobil never intended to cover such individuals. As the plan administrator noted, ExxonMobil never engaged in benefits communications with persons paid outside ExxonMobil's payroll system and never provided benefits to independent contractors or persons who provided services pursuant to a third-party agreement. All of this evidence supports the finding that the administrator's interpretation was not an abuse of discretion.[14] Cf. MacLachlan v. ExxonMobil Corp., 350 F.3d 472, 481-82 (5th Cir. 2003) (holding that, under a similar benefits plan to the plan at issue, an administrator's interpretation of the term "employee" as only including workers that were on the employer's payroll irrespective of whether they may be a common law employee was not an abuse of discretion), aff'd, Glenn, 128 S.Ct. 2343 (2008).

Scruggs's contention that Vizcaino v. Microsoft Corp., 97 F.3d 1187 (9th Cir. 1996) ("Microsoft I"), *vacated by* Vizcaino v. Microsoft Corp., 120 F.3d 1006 (9th 1997) (en banc) ("Microsoft II"), undermines the reasonableness of the administrator's decision is unpersuasive. In that case, plaintiffs, individuals who had been determined to be common-law employees by the IRS, claimed benefits

---

[14] Scruggs does not specifically challenge any of this evidence, nor does she argue that it was inappropriate for the plan administrator to rely on his own experience at ExxonMobil in interpreting the plan.

under Microsoft's savings and stock purchase plans even though they were paid through Microsoft's accounts payable rather than payroll department. The ERISA plan restricted participating employees to "any common-law employee . . . who is on the . . . payroll of the employer." Microsoft I, 97 F.3d at 1192 (emphasis omitted). In Microsoft I, a panel of the Ninth Circuit, reviewing the plan's denial *de novo* and employing the rule of *contra proferentem*, rejected Microsoft's interpretation that the term "employee" excluded persons who Microsoft thought were freelancers or independent contractors, and who were paid through accounts payable, but who were later determined by IRS to be common-law employees who should have been paid through the regular payroll system. The case at bar is readily distinguishable from Microsoft I. Here, we are employing a deferential standard of review and therefore the rule of *contra proferentem* is inapplicable.[15] See Kimber v. Thiokol Corp., 196 F.3d 1092, 1100 (10th Cir. 1999). Further, the Plan definitions are different.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[15] Although the en banc court ultimately agreed with the panel to reverse the denial of benefits, the en banc panel remanded to the administrator to consider, in the first instance, whether the requirement that an eligible individual "is" on the payroll of the employer should be interpreted as whether the individual "ought" to be on the payroll, such that the plaintiffs who were inappropriately excluded from the payroll should be entitled to participate in the plan. Microsoft II, 120 F.3d at 1013. In contrast, here the plan administrator, exercising his discretion under the plan, offered a well-reasoned explanation for why, under ExxonMobil's plans, an eligible participant had to be on the payroll.