# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 20-7036**

**September Term, 2021**

FILED ON: SEPTEMBER 3, 2021

GARY ANTHONY,
              APPELLANT

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT LODGE 1
AND IAM NATIONAL PENSION FUND,
              APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01249)

---

Before: ROGERS, PILLARD and WALKER, *Circuit Judges*.

## J U D G M E N T

The court considered this appeal on the record from the United States District Court, and the briefs and arguments of the parties. *See* D.C. Cir. R. 34(j). The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

Gary Anthony worked as a Union Organizer for International Association of Machinists and Aerospace Workers District Lodge 1 from 2004 to 2011. During that period, the District Lodge made contributions to the IAM National Pension Fund, a multiemployer pension plan, on behalf of employees in positions different from Anthony's. The Lodge did not contribute to the Fund on behalf of Anthony. When Anthony contacted the Fund in 2016 claiming the District Lodge should have contributed on his behalf, the Fund told Anthony that he was not a participant in the Plan. Anthony filed an administrative appeal, which the Appeals Committee of the Fund's Trustees denied in January 2017. Anthony then sued the District Lodge and the Fund under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3), which permit civil enforcement of the Employee Retirement Income Security Act of 1974 (ERISA). On the first count, Anthony argued that the defendants denied him benefits due under the terms of the Plan. On the second, he argued that they breached their fiduciary duty under 29 U.S.C. § 1104(a)(1)(D).

The district court dismissed Anthony's fiduciary duty claim against the District Lodge on the ground that Anthony failed to plausibly allege that the Lodge was a fiduciary under ERISA. *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1* (*Anthony I*), 296 F. Supp. 3d 92, 97 (D.D.C. 2017). The court then granted summary judgment to the defendants on the remaining claims. *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1* (*Anthony II*), 378 F. Supp. 3d 30, 33 (D.D.C. 2019). The court held in favor of the Fund on Anthony's denial-of-benefits claim under Section 1332(a)(1)(B) on the ground that the Fund's decision that Anthony was ineligible to participate in the Fund was reasonable. *Id.* at 36-44. The court's other holdings followed from that conclusion: Because the Fund was the party that determined Anthony was ineligible and because that decision was reasonable, the court also ruled for the Lodge on the denial-of-benefits claim. *Id.* at 45-46. And it ruled for the Fund on the fiduciary duty claim under Section 1132(a)(3) on the ground that Anthony could not seek relief via a fiduciary duty claim when the denial-of-benefits claim provided an adequate avenue for relief. *Id.* at 44-45.

On appeal, Anthony argues that the district court erred in holding that the Fund's denial-of-benefits decision was reasonable. He also claims that the Fund delegated that decision to the Lodge in breach of its fiduciary duty. We review the district court's decision de novo. *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 432 (D.C. Cir. 2011).

**1.** No party to this case claims that ERISA itself required the District Lodge to provide Gary Anthony a pension if it provided one to other employees. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91 (1983) ("ERISA does not mandate that employers provide any particular benefits . . . ."); *Bronk v. Mountain States Tel & Tel, Inc.*, 140 F.3d 1335, 1338 (10th Cir. 1998) ("It is well established that ERISA does not prohibit an employer from distinguishing between groups or categories of employees, providing benefits for some but not for others."); Jorden et al., Handbook on ERISA Litigation § 8.01[G] (4th ed. 2019) ("ERISA recognizes that no employer is obligated to contribute to an employee benefit plan without having entered into a consensual agreement to do so."). The question is whether the Fund's decision that Anthony was not eligible for a pension was reasonable. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115 (1989); *see also* J.A. 826 (extending the Fund's Trustees "the sole and absolute authority, in its discretion, to interpret this Plan and to determine eligibility for benefits under this Plan"); Appellant Br. 13-14 (applying a reasonableness standard). We hold that it was.

There is no record evidence in this case of any contract or communication from the District Lodge offering or promising Anthony a pension or from the Lodge informing the Fund that it had done so and remitting the corresponding payments on his behalf. For his part, Anthony does not suggest the terms of his own employment gave him any reason to think that he was covered by the Plan, nor that any statute or collective bargaining agreement secured coverage for him. Anthony instead invokes a handful of agreements between the District Lodge and the Fund under which the Lodge procured pension benefits from the Fund pursuant to the terms of the Plan. Anthony was not party to any of those agreements. And all available evidence (discussed below) shows that the contracting parties understood the agreements to cover jobs other than his. But Anthony argues that the plain language of those agreements nonetheless establishes that he was a participant in the

Fund, requiring that the District Lodge contribute to the Fund on his behalf.

Because Anthony has sued "to recover benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B), the participation agreements must be read together with the Fund's Plan itself. IAM established the Fund to provide retirement benefits for employees who are represented for purposes of collective bargaining by a union local, or lodge, of IAM. Typically, then, a "Contributing Employer" under the Plan is an employer that has negotiated a collective bargaining agreement with a union lodge. The employer contributes to the Fund on behalf of its unionized employees according to terms established by the collective bargaining agreement. But, as is the case here, an IAM lodge might itself have employees not themselves governed by a collective bargaining agreement for whom it wants to provide pension benefits. The Plan accordingly also recognizes that a lodge may itself serve as a "Contributing Employer." J.A. 543. And it makes clear that participation does not mean a lodge must offer pensions to and make contributions on behalf of all of its employees: The Fund will accept a lodge as a Contributing Employer "for the purpose of covering all its employees, or other appropriate and non-discriminatory classifications of its employees." J.A. 543. Anthony has not asserted that it was discriminatory to cover other employee classifications but not his own.

Here, the District Lodge has at various times employed people in three jobs—Business Representative, Secretary, and Organizer. It only extended pension coverage to—and only ever contributed to the Fund on behalf of—the first two. J.A. 324. When the Lodge originally became a Contributing Employer in 1965, it contributed only for the Secretary position. J.A. 321. Then, in 1979, it began contributing on behalf of the Business Representative position too. *Id.* But when it employed an Organizer from 1986 to 1988, the Lodge did not contribute to any pension on that employee's behalf—a practice it continued when, after leaving the position empty for 16 years, the Lodge hired Anthony as an Organizer in 2004. J.A. 380. And Fund records in evidence show that District Lodge 1 is not the only IAM lodge that has chosen to provide a pension to only a subset set of its employees. *See, e.g.*, J.A. 263 ("District Lodge 27 advised that they only wanted to participate in the plan for their Secretary position . . . .").

According to the Plan, an employee of a Contributing Employer is eligible to receive benefits only if the employee's job falls within "Covered Employment." J.A. 535. Where the employer is a lodge, "Covered Employment" means "employment in a job classification for which employer contributions are required to this Plan by a written agreement between the Trustees [of the Fund] and [the] Contributing Lodge." *Id.*; *see also* J.A. 544 ("The basis of contributions on behalf of the Covered Employees of [a] Lodge . . . is set forth in a participation agreement signed by the Lodge . . . ."). The question is thus whether Anthony was employed "in a job classification for which employer contributions [were] required to this Plan by a written agreement" between the Fund's Trustees and the District Lodge, obligating the latter to contribute to the Fund on Anthony's behalf.

The text of a standard-form participation agreement used by the Fund and the Lodge alone does not answer that question. The first paragraph of the signed copies of agreements submitted for the Secretary and separately for the Business Representative states that the Lodge "wishes to .

3

. . provide coverage under the . . . Plan for all its employees, except those employees in a bargaining unit which has negotiated a Collective Bargaining Agreement." J.A. 166. Because Anthony is not in a collective bargaining unit, that paragraph's reference to "all its employees," if read in isolation, would suggest the agreement applies to him. But the paragraph says nothing about the "job classifications" that the agreement covers, which the Plan itself identifies as the relevant inquiry.

When the phrase "job classifications" does first appear in the agreements, in the second paragraph, the text fails to resolve the question, stating only that the Lodge will contribute on behalf of "all employees in all job classifications covered by this Agreement." *Id.* The boilerplate text does not identify which classification each iteration of the agreement covers. And, unlike in the collective bargaining context, there is no collective bargaining agreement to which we might look to determine which classifications are covered. We thus must consider whether the Fund's determination that the Organizer was not a covered job classification was reasonable. *See Marcin v. Reliance Standard Life Ins. Co.*, 861 F.3d 254, 262 (D.C. Cir. 2017); *cf. Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009) ("Because the term 'employee' is ambiguous and the plan documents as a whole do not establish a definitive interpretation, it is appropriate to proceed to consider the reasonableness of the administrator's exercise of his interpretive discretion."); *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 14 (1st Cir. 2003) ("Where, as here, the Plan adopts a circular definition of employee—'Employee of the Employer'—the Plan administrator has the discretion reasonably to determine the meaning of that phrase.").

The evidence on that point all supports the Fund's conclusion: Both the Fund and the District Lodge understood that each participation agreement was job-specific. None included Anthony's Organizer position.

Consider, for instance, one participation agreement on which Anthony relies, signed in 2004, the same year that Anthony began his job as organizer. J.A. 411-13. That agreement stated that the Lodge intended to contribute $4.50 for each hour that "all employees in all job classifications covered by this Agreement are entitled to receive pay." J.A. 411. At that time, the Lodge had only two job classifications—Business Representative and Organizer. J.A. 379. (The Secretary position was then empty. J.A. 378.) While the standard-form agreement itself did not say which of those two job classifications it covered, minutes from a September 2004 meeting of the Lodge's executive board make clear that the particular agreement at issue was for the Business Representatives. J.A. 414 ("Motion made to 'Convert benefits for District #1 Business Representatives to the IAM National Pension Plan and increase the benefit $1.00 per hour from $3.50 to $4.50 per hour.' The motion was seconded and passed by voice vote.").

In February 2010, after the Secretary job was filled, the Lodge executed a separate agreement, again using that standard form, committing to contribute $2.50 per hour for the Secretary. J.A. 404-06. Indeed, while the set of job classifications covered by the agreement were again not specified in its second paragraph, a line at the bottom of the agreement identifying the lodge it applied to also made clear that it was limited to the Secretary. J.A. 406 ("For the Contributing Lodge: District Lodge No. 1, I.A.M. (Secretary)"). And the Lodge's meeting minutes again confirm that the 2010 agreement was job specific. J.A. 408 ("A motion was made, seconded

4

and approved by voice vote to make retro active [sic] contributions to the IAM Pension Fund for Secretary Treasurer Roger Falloon . . . to be funded at $2.50 per hour . . . .").  The Lodge then enclosed those minutes with a letter to the Fund in which it confirmed its intent to fund a pension on the Secretary's—and only the Secretary's— behalf.  J.A. 407.

Anthony points to no evidence that he had any reason to think each of those separate participation agreements covered every Lodge employee, himself included.  The evidence all points the other way:  District Lodge records show that Anthony, who served as a vice president of the Lodge, attended meetings in which the executive board discussed the Lodge's pension contributions in a job-specific manner, and presumably voted on the motions in which the board approved job-specific agreements.  *See* J.A. 414 (Lodge meeting roll call), 421 (Lodge meeting sign-in sheet).

Based on that record evidence, we hold that the Fund reasonably concluded that Anthony was not a Fund participant and thus not due benefits under the terms of the Plan.

**2.**  Anthony also argues that the Fund breached its fiduciary duty when it delegated the decision whether Anthony was a participant in the Fund to the District Lodge.  The Fund's Trust Agreement allows the Fund's Trustees to "allocate fiduciary responsibilities among the Trustees, or to committees of the Trustees."  J.A. 679.  As relevant here, the Trustees have delegated the responsibility to "[r]eview and make decisions on all participant appeals submitted to the Fund" to an Appeals Committee.  J.A. 850.  Anthony's claim is that the Committee impermissibly sub-delegated that authority to the District Lodge when it asked the Lodge which job classifications it intended to cover with the various participation agreements.  *See* J.A. 359, 361.

As the district court held, no such sub-delegation of the Appeals Committee's authority to decide participant appeals occurred here.  *See Anthony II*, 378 F. Supp. 3d at 38-39.  The Appeals Committee weighed the evidence provided by the District Lodge in addressing Anthony's appeal.  *See* J.A. 432-33.  But the Committee itself made the final decision that Anthony was not a participant "based upon the record before it."  J.A. 433; *see also* J.A. 435 (Committee's motion to deny the appeal after "review[ing] the facts, including material provided to the Committee by District Lodge No. 1").  Anthony was also given the opportunity to provide any documents or information for the Committee to consider.  J.A. 303.  But, as noted above, he failed to "present any documentary evidence such as an employment offer letter or employment agreement that commit[ted] District Lodge 1 to provide a pension through the Fund."  J.A. 433.

Anthony relies on a portion of the letter from the Fund denying his appeal that states that "District Lodge 1 unilaterally determines who is to be covered" under the Fund's Plan.  *Id.*  But that reference is to *ex ante* determination of which benefits to offer to which employees, not decision of the merits of Anthony's appeal.  As the Fund's letter went on to note, a union lodge's contributions under the participation agreements "are made on behalf of classes of employees who are unrepresented by an exclusive bargaining agent."  *Id.*  In other words, contributions are not required by a collective bargaining agreement, so the employer itself decides which classifications of its employees to cover; unlike in the collective bargaining context, whether to offer any

particular benefit "is an employment matter between [the employee] and [their] employer." *Id.* The question for the Appeals Committee was thus whether the District Lodge had committed itself to providing Anthony a pension. Because the participation agreements did not establish that it had, the Committee permissibly relied on other evidence to answer that question, including evidence from the District Lodge. *See Anthony II*, 378 F. Supp. 3d at 38-39 ["[T]he Committee reviewed the information provided to it by District Lodge 1, evaluated the strength of the evidence, and determined that [Anthony] was not entitled to coverage."]. In so doing, it did not sub-delegate to the Lodge its decision of Anthony's appeal.

For the foregoing reasons, we affirm the judgment of the district court. Because we hold that the Fund's determination that Anthony was not a participant was reasonable, we also reject Anthony's invitation to direct judgment against the District Lodge. Appellant Br. 17.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(b).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/

Daniel J. Reidy
Deputy Clerk

6