# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 5, 2017    Decided June 30, 2017

No. 16-7125

JILL MARCIN,
APPELLEE

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY AND MITRE
CORPORATION LONG TERM DISABILITY INSURANCE PROGRAM,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01308)

*Joshua Bachrach* argued the cause and filed the briefs for appellants.

*Scott B. Elkin* argued the cause and filed the brief for appellee.

Before: TATEL, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, Circuit Judge: This appeal concerns Jill Marcin's recovery of long-term disability benefits under an ERISA-governed plan. In 2008, Ms. Marcin filed for disability benefits under the Mitre Long Term Disability Plan, Group Policy Number 111701 (the "Plan" or "Policy"), citing numerous ailments that affected her cognitive abilities and motor functioning. Reliance Standard Life Insurance Company ("Reliance"), the Plan administrator, denied Ms. Marcin's request for benefits, explaining that she did not meet the definition of "Total Disability." In particular, Reliance concluded that Ms. Marcin was capable of performing all material duties of her employment on a full-time basis. Following an unsuccessful administrative appeal, Ms. Marcin filed suit against Reliance and the Plan in District Court in 2010. *See Marcin v. Reliance Standard Life Ins. Co. (Marcin I)*, 895 F. Supp. 2d 105 (D.D.C. 2012). The District Court remanded the case to Reliance, requesting additional explanation as to how the record supported Reliance's conclusion that Ms. Marcin was not disabled.

In early 2013, Reliance again denied Ms. Marcin's claim for disability benefits. Ms. Marcin filed a second lawsuit in District Court, which serves as the basis for this appeal. *See Marcin v. Reliance Standard Life Ins. Co. (Marcin II)*, 138 F. Supp. 3d 14 (D.D.C. 2015). Following an additional remand, the District Court entered judgment in favor of Ms. Marcin on October 14, 2015. Specifically, the District Court found that there was not substantial evidence in the record to support Reliance's denial of disability benefits, though it cautioned that it was not making a finding that Ms. Marcin was Totally Disabled. *Id.* at 30. In subsequent orders, the District Court determined that Ms. Marcin was entitled to disability benefits in the amount of $2,409.74 per month, along with post-judgment interest at the rate of 0.27 percent per annum from

October 14, 2015, and attorney's fees in the amount of $72,240.

Reliance timely appealed, arguing that the District Court erred by awarding Ms. Marcin disability benefits and miscalculating the amount of benefits owed. Reliance's strongest argument on appeal is that benefits under the Plan cannot be awarded without a factual finding of Total Disability. Given that the District Court explicitly disavowed making this determination, Reliance contends that an award of benefits was legally precluded. While we agree with Reliance that a finding of Total Disability was a prerequisite to the receipt of benefits, we are mindful of our *de novo* standard of review for summary judgment. Pursuant to this standard, we may affirm the District Court on any ground, and elect to do so on the basis that Ms. Marcin proved Partial Disability. According to the express terms of the Plan, Partial Disability is equivalent to Total Disability, and we find that Ms. Marcin was Totally Disabled within the relevant period. We also affirm the District Court's calculation of disability benefits owed to Ms. Marcin.

## I.

For almost seven years, Ms. Marcin has been engaged in litigation under the Employee Retirement Income Security Act ("ERISA") to recover disability benefits owed under the Plan. To date, the litigation has spanned two lawsuits, at least three remands, and now an appeal. While the procedural posture of this case is tortuous, the issue we must decide is relatively straightforward: did Ms. Marcin prove Total Disability in accordance with the terms of the Plan? The factual evidence in this case shows that she did.

4

**A.**

Prior to developing her disability, Ms. Marcin "worked as a multi-discipline systems engineer at Mitre, a non-profit organization that supports federally funded research and development centers with systems engineering and information technology assistance." *Marcin I*, 895 F. Supp. 2d at 107. Beginning January 1, 2005, Reliance issued Group Long-Term Disability Insurance Policy No. LTD 111701 to Mitre, and Ms. Marcin subsequently received coverage pursuant to the terms of this Plan. *See id.* As the claims review fiduciary, Reliance is responsible for determining eligibility for benefits under the Policy. *Id.*

To be eligible for disability benefits, the Plan explicitly requires an insured to satisfy four elements. *First*, the individual must be "Totally Disabled as the result of a Sickness or injury covered by this Policy." J.A. 2131. The term "Totally Disabled" (or, alternatively, "Total Disability") means:

(1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;

(a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

(b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and

(2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

J.A. 2123. In other words, an insured is entitled to disability benefits under this first prong of the Policy if, due to her ailments, she was incapable of performing all of the material duties of her occupation on a full-time basis. A Partial Disability under the Policy is equivalent to Total Disability.

Further, the Policy provides that the insured's coverage will terminate on "the first of the Policy month coinciding with or next following the date the Insured ceases to meet the Eligibility Requirements." J.A. 2129, 2156. To meet the Eligibility Requirements, an insured must be an "Eligible Person," meaning that she is a full-time or part-time employee actively at work. The term "Actively at Work" means that the insured is performing the material duties of her job on a full-time or part-time basis in the place and manner in which the job is normally performed. This encompasses approved time off, including vacation and jury duty, but does not include time off as a result of injury or sickness. Thus, an insured's

disability must develop while she is still covered by the Plan. A disability that arises after coverage has ceased is not eligible for benefits.

*Second*, the insured must be under the regular care of a physician. *Third*, the individual must have completed the "Elimination Period." The Elimination Period is defined by the Policy as a "period of consecutive days of Total Disability . . . for which no benefit is payable. It begins on the first day of Total Disability," J.A. 2122, and is "[t]he greater of expiration: 180 consecutive days of Total Disability or the end of The MITRE Corporation's continuation program," J.A. 2120. Accordingly, an insured must show that during this 180-day period, she was incapable of performing the material duties of her regular occupation on a full-time basis. *Fourth*, the individual must submit "satisfactory proof of Total Disability" to Reliance. J.A. 2131. For any Total Disability, the insured must send written proof within ninety days after the Total Disability occurs or as soon as reasonably possible. If an insured satisfies these four requirements, then Reliance is obligated to pay monthly benefits under the Plan. Only the first element is at issue in this case.

**B.**

Beginning November 2005, Ms. Marcin was diagnosed with numerous medical conditions, including kidney cancer, portal vein thrombosis, Factor V Leiden, splenorenal shunt, anemia, and polycystic ovarian syndrome. *See Marcin I*, 895 F. Supp. 2d at 108. The joint appendix chronicles the myriad doctors' appointments, diagnoses, and medical procedures that Ms. Marcin underwent starting in 2005. According to the record, Ms. Marcin submitted an application for long-term disability benefits under the Plan on March 25, 2008. In this application, Ms. Marcin claimed that her last day of work

before becoming disabled was August 19, 2007. *See id.* While Ms. Marcin did return to work between November 2007 and February 2008, it was only on a part-time basis, and she ceased working altogether on February 15, 2008. On December 18, 2007, Mitre notified Reliance of Ms. Marcin's disability claim. *Id.*

In support of her disability claim, Ms. Marcin provided Reliance with voluminous medical records, her work history, witness statements, and scientific literature concerning her illness. Ms. Marcin's medical records showed a decline in her well-being and functional capabilities from August 2007 to March 2008. Following her kidney surgery in late August 2007, a Preliminary Report dated October 26, 2007 by Dr. Richard Guido noted that Ms. Marcin "is doing fairly well." J.A. 76. Ms. Marcin was then released by her doctor to return to work, but only "as tolerated." At a follow-up visit on November 30, 2007, Dr. Anthony Felice explained that Ms. Marcin "feels reasonably well" and "has no pain." J.A. 89, 2063. Approximately one month later on December 31, 2007, Dr. Felice stated in a Progress Note that Ms. Marcin "is reasonably well although [she] has some mild fatigue," and will take iron to counteract her anemia. J.A. 91, 2065. However, on February 29, 2008, Dr. Felice acknowledged that although Ms. Marcin "is feeling better," she "still has much fatigue," which "limits her ability to work." J.A. 82.

Dr. Felice's findings were further confirmed by Dr. Kareem Abu-Elmagd on March 20, 2008, when he noted that Ms. Marcin "is currently in Pittsburgh for additional testing" and "will need to remain off of work until further notice, pending test results." J.A. 2205. Five days later, Dr. Abu-Elmagd completed an Attending Physician Statement ("APS"), in which he stated that Ms. Marcin suffered from "extreme fatigue, [and] frequent illness." J.A. 2025. Dr. Abu-

Elmagd included his assessment that Ms. Marcin was, at most, capable of sedentary work, that she had not yet achieved maximum medical improvement, and that it was "unknown" whether she would make a full recovery. J.A. 2026, 2205. Finally, an October 24, 2008 Functional Capacity Evaluation ("FCE") reported that Ms. Marcin has a "below part time workplace tolerance" and "is unable to return to work in her previous position or any other position."[1] J.A. 559. Dr. Costa explained on this FCE that Ms. Marcin suffered from these same work restrictions from August 2007 through October 2008.

Indeed, Ms. Marcin's medical assessments are further substantiated by her inability to engage in full-time employment. An examination of Ms. Marcin's sick leave shows that she never returned to work full time after the onset of her disability in August 2007. Rather, the number of sick days Ms. Marcin took increased exponentially from November 2007 to February 2008, and Ms. Marcin never worked a 40-hour week during that time period.

Despite this evidence, Reliance denied Ms. Marcin's disability claim. *See Marcin I*, 895 F. Supp. 2d at 108. Reliance based its denial on the grounds that "the medical records on file do not support work impairment at date of loss or beyond 11/6/07 when you were released to work status post nephrectomy." J.A. 1993; *see Marcin I*, 895 F. Supp. 2d at 108. In support of its decision, Reliance noted that there was no written documentation from Ms. Marcin's physicians supporting her inability to work. Reliance relied upon notes from Ms. Marcin's doctors stating that she only had "some mild fatigue," but overall "look[ed] well." J.A. 1993. All of

---

[1] The October 24, 2008 FCE was not included in the original claim record, but was added to the record after Reliance's first denial of benefits.

Ms. Marcin's labs on file document hemoglobin slightly below normal, but Reliance inferred that these labs did not support work impairment. Reliance thus concluded that Ms. Marcin did not meet the Plan's definition of disability.

Ms. Marcin appealed her claim denial on December 29, 2008, and Reliance denied the appeal on September 29, 2009. Specifically, Reliance re-examined the claim record and evaluated the medical opinions of two physicians hired by Reliance – Dr. Stuart Shipko and Dr. Herbert Dean. Reliance found that Ms. Marcin's own doctor released her to return to work "as tolerated" on November 6, 2007, and that Ms. Marcin did in fact work part time from November 2007 to February 2008. It was Reliance's position, "based on the totality of information in the claim file, that Ms. Marcin was capable of performing the material duties of her own occupation at the time that she was released to return to work on 11/6/07 following her nephrectomy." J.A. 2004.

## C.

Ms. Marcin filed suit in the District Court on October 26, 2010, challenging Reliance's denial of disability benefits. *Marcin I*, 895 F. Supp. 2d at 112. After conducting a detailed analysis of the record, the District Court found that Reliance "failed to adequately explain how the evidence in the record supports its determination that [Ms. Marcin] is not entitled to disability benefits." *Id.* at 123. The District Court observed that Ms. Marcin clearly suffered from severe medical conditions, but thought she had done "little to meet her burden under the policy to demonstrate that she was disabled" during the relevant time period. *Id.* at 122. At the same time, the District Court also noted that Reliance had "failed to point to much evidence to support the finding" that Ms. Marcin was not disabled at the relevant time. *Id.* Accordingly, the District

Court stated that "whether the insurer's determination was reasonable on this record depends in large measure on what that determination was and the stated reasons behind it." *Id.* at 119. The District Court, however, was unable to decipher Reliance's rationale for denying disability benefits and remanded the case. *Id.* at 123.

On January 7, 2013, Reliance responded to the remand by again denying Ms. Marcin's claim for disability benefits. As an initial matter, Reliance clarified that eligibility for long-term disability benefits "depends on whether the definition of Total Disability is met, which includes a determination regarding Partial Disability." J.A. 2013. In its prior denial, Reliance found that Ms. Marcin did not meet the definition of Total Disability and was capable of performing the material duties of her occupation with Mitre. However, in accordance with the District Court's order, Reliance addressed whether, based upon the medical evidence, Ms. Marcin was Totally Disabled, taking into consideration Partial Disability, as defined by the Policy. Unsurprisingly, Reliance concluded that Ms. Marcin was not Partially Disabled because "the medical evidence supports that she is capable of performing all of the material duties of her occupation on a full-time basis." J.A. 2013; *see* J.A. 2015.

Ms. Marcin again appealed Reliance's denial of her disability claim on June 28, 2013. Along with this appeal, Ms. Marcin "submitted voluminous materials to Reliance," including a copy of the Social Security Administration's 2010 decision awarding Ms. Marcin disability benefits, and a new report from a vocational specialist. Reliance, however, refused to entertain another appeal, stating that its internal guidelines only provide for one appeal and Ms. Marcin exhausted this remedy.

**D.**

Following Reliance's second denial of her disability claim, Ms. Marcin filed the complaint in this case on August 28, 2013. Reliance filed a motion for summary judgment on July 29, 2014. The District Court remanded the case to Reliance again, and Reliance issued its response to the second remand on May 22, 2015. In its response, Reliance denied Ms. Marcin's disability claim a third time. In addition to addressing the Social Security Administration's disability decision, Reliance also tackled the important question of whether Ms. Marcin was Partially Disabled or Residually Disabled before March 1, 2008. Reliance explained that because "the evidence failed to show that [Ms. Marcin's] impairments prevented her from performing all the material duties of her regular occupation on a full-time basis," she could not be Partially Disabled or Residually Disabled. J.A. 2183. Reliance expressly acknowledged that it "reviewed the evidence indicating that Ms. Marcin worked on a part-time basis between November 6, 2007 and March 1, 2008, however, the medical evidence did not support her inability to maintain a full-time schedule." J.A. 2183. Therefore, Reliance concluded that because Ms. Marcin could work full time, she was not Partially Disabled.

Faced with Reliance's final determination, the District Court entered judgment in favor of Ms. Marcin on October 14, 2015. The District Court found that "although certain aspects of Reliance's Final Decision were reasonable, the insurer's ultimate conclusion that [Ms. Marcin] 'was capable of performing all of the material duties of her regular occupation on a full time basis between November 6, 2007 and March 1, 2008' is not supported by 'substantial evidence.'" *Marcin II*, 138 F. Supp. 3d at 22 (citation omitted). Specifically, the District Court noted that "Reliance

entirely failed to grapple with the fact that [Ms. Marcin] never worked full time between November 2007 and February 2008, and that the hours she did work declined sharply in the weeks before she stopped altogether." *Id.* at 23. Therefore, the District Court could not "conclude that Reliance's determination that [Ms. Marcin] was capable of working full-time on March 1, 2008, was 'reasonably supported by the administrative record.'" *Id.*

In making this determination, however, the District Court expressly limited the scope of its opinion. The District Court explained that its holding was restricted to whether substantial evidence existed in the record to support Reliance's conclusion that Ms. Marcin was capable of full-time work. *See id.* at 30. Although the District Court acknowledged that "the medical evidence might well support a decision based on a finding that [Ms. Marcin] was not 'totally disabled' at the relevant time," it could not "see how the records provide any support for the conclusion that [Ms. Marcin] 'was capable of perform[ing] all of the material duties of her regular occupation on a full time basis' when she stopped working." *Id.* at 28. However, the District Court expressly cautioned "that it has not made a determination about whether [Ms. Marcin] was or was not 'totally disabled' within the meaning of the plan." *Id.* at 30. "Rather, its holding is that the record in this case does not reasonably support the plan administrator's decision that [Ms. Marcin] was capable of full-time work when she stopped, and since that is the basis for the denial of the benefits, the denial cannot stand." *Id.*

Following this determination, the District Court addressed the parties' disagreement regarding the amount of damages that should be awarded. The District Court concluded that Ms. Marcin's salary "was approximately $90,000 per year, or about $43 per hour, and that the first 24

months of benefits should be calculated on that basis." J.A. 2284; *see* J.A. 2286-89. Based on the Policy benefit of 60% of covered monthly earnings, the District Court found that Ms. Marcin was entitled to disability benefits of $2,409.74 per month for the 24-month period between February 16, 2008 and February 16, 2010, or $57,833.76, plus post-judgment interest at the rate of 0.27 percent per annum from October 14, 2015. After a third remand, the District Court entered final judgment for Ms. Marcin "in the amount of $2,409.74 per month for the 103 months between February 16, 2008 and September 19, 2016, for a total award of $248,203.22." J.A. 2302.

Although Reliance concedes that Ms. Marcin is now totally disabled under its Policy – and indeed, unable to work in any occupation – the insurer maintains that Ms. Marcin was ineligible for benefits under its Policy when she stopped working in 2008. Reliance thus appeals four rulings from the District Court: (1) September 19, 2016 Final Judgment for Ms. Marcin in the amount of $248,203.22, along with pre-judgment interest and attorney's fees of $72,240; (2) August 4, 2016 Memorandum Opinion and Order awarding disability benefits to Ms. Marcin at $2,409.74 per month; (3) October 14, 2015 Memorandum Opinion denying Reliance's motion for summary judgment and entering judgment in favor of Ms. Marcin; and (4) April 14, 2015 Memorandum Opinion and Order denying Reliance's motion for summary judgment and remanding the claim for further action. Appellant Br. i-ii. This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1291.

## II.

Our review of this case is governed by the interplay of two separate standards. First, we review *de novo* the District

Court's decision to grant summary judgment. *Grimes v. District of Columbia*, 794 F.3d 83, 88-89 (D.C. Cir. 2015); *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006). Because this Court analyzes the District Court's judgment, not its reasoning, we may affirm on any ground properly raised. *EEOC v. Aramark Corp.*, 208 F.3d 266, 268 (D.C. Cir. 2000). Summary judgment is appropriate if there is no genuine issue of material fact, and judgment can be granted as a matter of law. FED. R. CIV. P. 56(a). In assessing a summary judgment motion, the Court must view all facts and evidence in the light most favorable to the nonmoving party. *Arrington*, 473 F.3d at 333; *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). Summary judgment will only be granted if no reasonable jury could find for the nonmoving party. *See Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009); *Carter*, 387 F.3d at 878. To survive a motion for summary judgment, the party with the burden of proof at trial must offer evidence showing that there is a triable issue of fact regarding an essential element of the claim. *Arrington*, 473 F.3d at 335.

Second, although we review summary judgment determinations using a *de novo* standard, we must decide the appropriate framework through which to consider an ERISA plan. While ERISA is a "comprehensive and reticulated statute," it does not set out the appropriate standard of review for actions challenging benefit eligibility determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108-09 (1989). The Supreme Court has held that a denial of benefits challenged under § 1132(a)(1)(B) of ERISA is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Firestone*, 489 U.S. at 115. Where the plan gives the administrator

discretionary authority, then a deferential standard of review applies. *Firestone*, 489 U.S. at 111. This deferential standard is one of reasonableness. *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 435 (D.C. Cir. 2011).

In the present case, the ERISA policy provides that Reliance "shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the *discretionary authority* to interpret the Plan and the insurance policy and to determine eligibility for benefits." J.A. 2238 (emphasis added). Thus, the deferential standard of review applies, and we must examine Reliance's decision to deny disability benefits for abuse of discretion. *See Firestone*, 489 U.S. at 111. Accordingly, Reliance's denial of benefits will not be overturned if it was the result of a deliberate and reasoned process and if it is supported by "substantial evidence," which is "more than a scintilla but less than a preponderance." *Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 475 (D.C. Cir. 1998) (quoting *Burns v. Dir., Office of Workers' Comp. Programs*, 41 F.3d 1555, 1562 n.10 (D.C. Cir. 1994)).

Importantly, however, there is an inherent conflict of interest that arises when a plan administrator both evaluates claims for benefits and pays those benefits. *Glenn*, 554 U.S. at 112. The Supreme Court has explained that this conflict of interest is a "factor" to be considered and that "any one factor will act as a tiebreaker when the other factors are closely balanced." *Id.* at 117. While the factors to be examined in any ERISA case will vary based on the factual circumstances, *Glenn* makes clear that the conflict of interest factor must be evaluated alongside these other determinations. Thus, when reviewing the lawfulness of Reliance's decision to deny disability benefits, we must remember the conflict of interest factor and weigh it appropriately.

**III.**

Faced with both *de novo* and discretionary review, our inquiry in this case is as follows: did Reliance act unreasonably when it denied Ms. Marcin disability benefits on the basis that she was capable of full-time work and, therefore, not Partially or Totally Disabled? To answer this question, we must first consider a related issue: did Ms. Marcin satisfy her burden of proof to show that she was Partially or Totally Disabled during the relevant period? We find that because Ms. Marcin proved Partial Disability, Reliance acted unreasonably in denying her benefits.

**1.**

The record in this case favors a finding of Partial Disability. As an initial matter, we note that, pursuant to the terms of the Policy, Ms. Marcin's disability had to arise before March 1, 2008, when her coverage terminated under the Plan.[2] We begin first with Ms. Marcin's lengthy medical records. There is no dispute that Ms. Marcin suffered from numerous ailments, including kidney cancer, portal vein thrombosis, Factor V Leiden, splenorenal shunt, and anemia. *See Marcin I*, 895 F. Supp. 2d at 108. Rather, the disagreement concerns whether these medical diagnoses were debilitating. In its denial letters, Reliance repeatedly claimed that Ms. Marcin was not Partially Disabled because she only suffered mild fatigue and had not been instructed by her doctors to stop working. In fact, Reliance emphasized that

---

[2] Ms. Marcin's last day of work was February 18, 2008. The Policy states that coverage will terminate on the first of the month following the date the insured ceases to meet the Eligibility Requirements. Thus, because Ms. Marcin stopped meeting the Eligibility Requirements in February 2008, her coverage under the Policy terminated on March 1, 2008.

Ms. Marcin was cleared to return to work by her own doctor in November 2007. Reliance, however, misconstrues the evidence.

A chronological examination of Ms. Marcin's medical records shows a progression of her illness to the point of disability. Prior to returning to work, Ms. Marcin saw Dr. Guido on October 26, 2007 for a follow-up visit. At that time, Dr. Guido noted that Ms. Marcin "is doing fairly well." J.A. 76. Ms. Marcin was released to return to work in November 2007 only "as tolerated," clearly implying that her ability to work was partially impaired. Following her return to work, Ms. Marcin saw Dr. Felice on November 30, 2007. At this visit, Dr. Felice explained that Ms. Marcin "feels reasonably well" and "has no pain." J.A. 89, 2063. Approximately one month later on December 31, 2007, Dr. Felice noted that Ms. Marcin "is reasonably well although [she] has some mild fatigue," and suggested that Ms. Marcin take iron to counteract her anemia. J.A. 91, 2065. Accordingly, at the end of 2007, Ms. Marcin's illness began producing recognizable symptoms.

The medical evidence in support of disability becomes more prevalent in February and March of 2008. At a follow-up visit on February 29, 2008, Dr. Felice acknowledged that although Ms. Marcin "is feeling better," she "still has much fatigue," which "limits her ability to work." J.A. 82. There is a marked change in Dr. Felice's description of Ms. Marcin's fatigue from "mild" in December 2007 to more severe in February 2008. Reliance completely ignores this clear alteration in terminology used by Dr. Felice.

Further, Dr. Felice's characterization of Ms. Marcin's symptoms is supported by Dr. Abu-Elmagd. On March 20, 2008, Dr. Abu-Elmagd noted that Ms. Marcin is undergoing

additional testing and "will need to remain off of work until further notice." J.A. 2205. Reliance discredits this report because Dr. Abu-Elmagd instructed Ms. Marcin to cease working only *after* she quit her job at Mitre. While a doctor's note explaining Ms. Marcin's work limitations would have been helpful before she ceased working, it was by no means a prerequisite to the establishment of her disability. The fact that such documentation comes a mere twenty days later does not eliminate its probative value. Rather, Dr. Abu-Elmagd's recommendation that Ms. Marcin remain off of work is still temporally related to Ms. Marcin's decision to leave her employment in late February/early March 2008 and provides additional evidence that Ms. Marcin was Partially Disabled before the end of February.

Moreover, Dr. Abu-Elmagd provided a more in-depth assessment of Ms. Marcin's capabilities five days later in the APS. In that document, Dr. Abu-Elmagd characterized Ms. Marcin's fatigue as "extreme" and explained that she also suffered from "frequent illness." J.A. 2025. Thus, we see that from November 2007 to March 2008, Ms. Marcin progressed from having no fatigue to "mild" fatigue to "much" fatigue to "extreme" fatigue. Again, Reliance ignores this progression. Further, Dr. Abu-Elmagd explained that given Ms. Marcin's symptoms and diagnoses, she was, at most, capable of sedentary work. Specifically Dr. Abu-Elmagd stated that during an eight-hour day, Ms. Marcin could only stand, walk, and drive for one to three hours, and could sit for three to five hours. Additionally, Ms. Marcin could only lift ten pounds and it was "unknown" whether she would make a full recovery.

Reliance discredited Dr. Abu-Elmagd's findings by relying on the reports of two independent medical physicians – Dr. Dean and Dr. Shipko. After reviewing Ms. Marcin's

medical file, Dr. Dean, a hematologist and oncologist, opined that Ms. Marcin's likelihood of cure from kidney cancer is greater than 90%, and that she should have no medically related problems from this procedure. This statement, however, does not address Ms. Marcin's likelihood of cure from her other ailments. Dr. Dean also generally agreed with Dr. Abu-Elmagd's findings in the APS with the exception of Ms. Marcin's lifting and sitting capabilities. Dr. Dean found that Ms. Marcin should be able to sit for up to six hours, walk and stand for up to three hours, and drive for up to three hours. Additionally, Ms. Marcin should be able to lift up to twenty pounds occasionally and ten pounds frequently. Dr. Dean based part of his assessment on the fact that Ms. Marcin travels frequently to the University of Pittsburgh Medical Center, which is over 200 miles from her home, for follow-up visits. Accordingly, Dr. Dean stated that Ms. Marcin is capable of work that falls in the "light" category, which her job at Mitre satisfies. Further, both Dr. Dean and Dr. Shipko noted that Ms. Marcin did not have any cognitive disabilities that would impair her functioning.

Our precedent is clear that "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). While the plan administrator must provide a "full and fair" assessment of the claims and clearly communicate to the insured the "'specific reasons' for benefit denials," these requirements "do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition." *Id.* Similarly, there is no heightened burden of explanation placed on the plan administrator if it decides to reject a treating physician's opinion. *Id.* at 831. We have specifically held that, when "[f]aced with contradicting [medical] opinions and no requirement to prefer one opinion

over another, we cannot conclude that [the plan administrator] acted unreasonably when it valued the opinion of its own personnel over that of [the insured's] surgeon." *Pettaway*, 644 F.3d at 435.

That said, it must be clear that the independent medical reviewer rendered a decision that is "reliable." *Black*, 538 U.S. at 834 ("[N]or may courts impose on plan administrators a discrete burden of explanation when they credit *reliable* evidence that conflicts with a treating physician's evaluation." (emphasis added)). We think a "reliable" opinion is one that includes an examination of all pertinent evidence. Here, however, we cannot conclude that Dr. Dean grappled with the evidence concerning Ms. Marcin's partial disability. Dr. Dean never contends with the fact that Ms. Marcin only returned to work part time, and says nothing about the progression of her fatigue. Rather, Dr. Dean only remarks that Ms. Marcin "does complain of fatigue, which can be [multifactorial], and is reported to be present in patients with portal hypertension as well as seen with depression." J.A. 2146. While Dr. Dean offers a brief recitation of Ms. Marcin's medical visits from October 2007 through January 2009, he in no way explains how his conclusions are rationally related to the medical evidence. Rather, Dr. Dean relies on the fact that Ms. Marcin has a 90% chance of cure from renal cancer, and seemingly ignores the symptoms associated with her other diagnosed conditions as well as her cancer. *See Marcin II*, 138 F. Supp. 3d at 28-29. Further, the availability of a cure has little bearing on whether Ms. Marcin is capable of working full time in her present condition. *Id.* at 29. It is difficult to credit a decision as "reliable" when the reviewer fails to link his conclusions to the patient's medical history. *See id.* at 28 (explaining that while Reliance was not obligated to accord special deference to Ms. Marcin's physicians, its "selective

description of the medical evidence further undermines the reasonableness of its decision").

While we make no ultimate determination as to the reasonableness of Reliance's decision to credit Dr. Dean's medical opinion, we note that Dr. Dean's report is by no means compelling. Dr. Dean never addressed the fact that Ms. Marcin did not return to work full time, nor does he ever dispute Dr. Abu-Elmagd's finding in the APS that Ms. Marcin suffered from severe fatigue and frequent illness. Nothing in Dr. Dean's opinion substantially undermines Dr. Abu-Elmagd's APS. At best, Dr. Dean's report is an incomplete assessment of Ms. Marcin's abilities.

Finally, the FCEs contained in the record support a finding of Partial Disability. Ms. Marcin's first FCE occurred on October 24, 2008, several months after she left her employment at Mitre. In this FCE, Carlos Martinez, a physical therapist, noted that Ms. Marcin has a "below part time workplace tolerance" and "is unable to return to work in her previous position or any other position." J.A. 559. Several years later, on May 7, 2013, Dr. Costa echoed these findings, noting that Ms. Marcin could not complete an eight-hour work day on a sustained basis. As part of this evaluation, Dr. Costa stated that he agreed with Mr. Martinez's findings in the October 24, 2008 FCE. Further, because Dr. Costa was one of Ms. Marcin's treating physicians at the time her disability occurred, he was asked on the FCE if Ms. Marcin suffered from the same restrictions as indicated in the October 24, 2008 FCE from August 2007 through October 2008. Dr. Costa responded in the affirmative. This shows that Ms. Marcin's inability to work full time existed during her eligibility period from November 2007 to March 2008. While we are hesitant to place too much weight on the FCEs because they were conducted several months or years outside the

disability period, we nonetheless acknowledge their findings as an important data point.

When viewed in totality, the medical record shows that Ms. Marcin could not sustain a full-time work schedule. Reliance's conclusions to the contrary based on this evidence are therefore unreasonable.

**2.**

In addition to the medical record, Ms. Marcin's work history supports a finding of Partial Disability. The parties do not dispute that Ms. Marcin never returned to work full time following her surgery in August 2007. To the contrary, the record is quite clear that Ms. Marcin experienced a significant decline in hours worked during January, February, and March 2008. From November 12, 2007 through February 24, 2008, there were only five weeks in which Ms. Marcin did not miss a single day of work due to illness. Of these five weeks, two occurred between Christmas and New Year, when Ms. Marcin was only scheduled to work two hours each week. In contrast, there were five weeks where Ms. Marcin missed between 20% and 40% of her scheduled work hours due to illness, and four weeks where Ms. Marcin's disability caused her to miss greater than 50% of her scheduled work hours. Further, during late January and February 2008, when Ms. Marcin missed between 40% and 100% of her scheduled work hours, the medical records confirm that she was suffering from a severe sinus infection. Frequent infections are a side effect of leukopenia, which is one of Ms. Marcin's numerous diagnoses. Dr. Abu-Elmagd even noted frequent infections as one of Ms. Marcin's symptoms in the APS. Thus, there is a direct link in the record between Ms. Marcin's sick days and her disability. Given this data, it is evident that Ms. Marcin

suffered a disability that limited her capacity to work full time.

Reliance, however, fails to adequately address this data in its numerous denial letters. Instead, while acknowledging that Ms. Marcin never returned to work full time, Reliance nonetheless argues that she is capable of full-time work. Reliance relies heavily on the fact that Ms. Marcin did not have a doctor's recommendation to leave her employment, and instead was released back to work in November 2007 "as tolerated." Through her work history, Ms. Marcin has proven that working part-time is the best she can "tolerate" given her disability. It is contradictory for Reliance to fault Ms. Marcin for not providing a medical recommendation to cease working when she was only ever released to work "as tolerated." There would have been no reason for the doctors to inform Ms. Marcin to work only "as tolerated" if they believed that she was capable of working full time and that her medical condition would not affect her ability to work. Thus, provided Ms. Marcin's work history and the "as tolerated" language in her release, Reliance's conclusion that Ms. Marcin could work full time was unreasonable.

\*\*\*

Given the above evidence and considerations, we find that Reliance acted unreasonably in denying Ms. Marcin disability benefits. The conflict of interest factor in the standard of review, combined with Ms. Marcin's medical record, lack of full-time work, and release to return to work only "as tolerated" convince us that Ms. Marcin established Partial Disability as required by the Policy. Reliance has not satisfactorily supported its conclusion that Ms. Marcin was ever capable of full-time work after November 2007. Therefore, Ms. Marcin was Totally Disabled under the terms

of the Policy and entitled to disability benefits. The judgment of the District Court on this issue is affirmed. Further, because we find that Ms. Marcin's salary at the time of disability was $90,000, we affirm the District Court's calculation of benefits owed.

*So ordered.*