# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 23, 2018    Decided July 17, 2018

No. 17-7138

RONALD E. PECK,
APPELLANT

v.

SELEX SYSTEMS INTEGRATION, INC. AND SELEX SISTEMI
INTEGRATI, INC. KEY EMPLOYEE DEFERRED COMPENSATION
PLAN,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00073)

*William R. Wilder* argued the cause and filed the briefs for appellant.

*Timothy A. Hilton* argued the cause for appellees. With him on the brief were *Julianne P. Story*, *Michael T. Raupp*, and *Steven A. Neeley.*

Before: HENDERSON and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: After working at SELEX Systems Integration, Inc. for over fifteen years, Ronald Peck was terminated for refusing to transfer to a different position in the company. He filed separate claims for benefits under SELEX's deferred-compensation plan and its severance policy. Both claims were denied on the same ground: that Peck's termination for refusing to transfer positions rendered him ineligible for benefits.

Peck filed suit against SELEX and its Key Employee Deferred Compensation Plan (together, SELEX), alleging that the denial of benefits violated the Employee Retirement Income Security Act of 1974 and breached SELEX's contractual duty to provide severance pay to eligible employees. The district court granted judgment in SELEX's favor on both the deferred-compensation claim and the severance-pay claim. We vacate the district court's judgment with regard to deferred compensation but affirm with regard to severance pay.

I.

For over fifteen years, Ronald Peck worked at SELEX Systems Integration, an international company that designs and produces aviation navigation, defense, and surveillance systems for governments, militaries, and industrial operators. Peck began his tenure with SELEX as the Director of Quality at the company's U.S. headquarters in Overland Park, Kansas. Peck rose through the ranks of the quality department over the next eleven years, eventually assuming the role of Vice President of Quality and Engineering.

Peck transitioned away from quality-control positions in conjunction with SELEX's implementation of a five-year plan to expand its U.S. market. In March 2008, Peck became the Vice President of Business Development, responsible for all

marketing and sales in the U.S. market. Two years later, SELEX opened an office in Washington, D.C., to establish a presence near the Federal Aviation Administration and other D.C.-based clients. In connection with the opening, Peck became Vice President of Strategy and Product Planning, another marketing role. For the first year in the new position, Peck traveled frequently between Kansas and D.C. In October 2011, Peck moved to D.C. full time, and in February 2012, he officially transferred to the company's D.C. office.

On August 23, 2012, SELEX's Chief Executive Officer, Mike Warner, held a meeting with Peck. Warner informed Peck that he was being removed from the marketing position in D.C. due to poor performance. Warner offered Peck the option to transfer back to the Kansas office and assume the position of Vice President of Quality Control and Business Improvement. Warner memorialized the offer in a letter to Peck dated August 29, 2012. The letter confirmed that Peck's removal from the "marketing leadership role" resulted from "recurring deficiencies in [his] performance" that could have "jeopardize[d] the continued success of the company's business initiatives." J.A. 86. The letter said that the company therefore "need[ed Peck] to transfer immediately back to Overland Park to assume the [quality-control] position," which was "well suited to [his] expertise." *Id.*

After initially declining Warner's offer on the telephone, Peck confirmed his decision in a letter dated September 3, 2012. Peck explained in the letter that the new position was "not an equivalent position to [his] current role," did not "represent a logical step in [his] career progression," and "would . . . effectively [have] be[en] a regression in [his] career with the Company." J.A. 87. Peck nonetheless expressed his willingness to continue in the D.C. marketing position.

Warner responded in a letter dated September 14, 2012, explaining that there was no longer a position for Peck in D.C. Warner sought to assure Peck that the new position was not a "regression" because Peck would report directly to Warner and take on the new responsibility of directly supervising others. J.A. 88. Warner thus urged Peck to "reconsider [his] refusal to accept [the] new assignment" within two weeks. J.A. 89. Warner expressed that Peck's refusal to do so "would constitute 'cause'" for his termination. *Id.* Although Peck, as an at-will employee, could be terminated without cause, a for-cause termination would affect his eligibility for certain deferred-compensation and severance benefits.

Peck and Warner exchanged a few more letters, with Peck maintaining that his refusal to accept the quality-control position could not be considered "cause" for his discharge, and Warner maintaining the opposite stance. On September 30, 2012, Warner terminated Peck's employment with SELEX, and his marketing responsibilities were distributed among Warner and two D.C. consultants.

After Peck's termination, he submitted a claim for benefits under SELEX's "Key Employee Deferred Compensation Plan." Peck had joined the Plan as a "Key Employee" in July 2008, when serving as the Vice President of Business Development. The Plan is an unfunded, deferred-compensation plan. The Plan is of a type described as a "top-hat plan," in that it allows employers to provide retirement benefits to select employees in excess of the benefits provided under typical retirement plans. *See* 29 U.S.C. § 1051(2).

Under the Plan, Peck's entitlement to benefits would ordinarily vest after five years of participation in the Plan. The Plan provided, however, that his right would vest before five years if, among other reasons, he was terminated by SELEX

without cause. As relevant here, the Plan defines "cause" as an employee's "habitual neglect of or deliberate or intentional refusal to perform any of his or her material duties and obligations of his or her employment (including compliance with the Company's Code of Conduct) with the Company." J.A. 59.

According to the Plan's terms, the Administrative Committee has "discretionary authority and responsibility to interpret and construe the Plan" and to determine whether employees are eligible for payouts under the Plan. J.A. 67. Here, the Committee, composed at the time of CEO Warner, the Chief Financial Officer, and the Human Resources Director, denied Peck's claim for benefits after concluding that he had been terminated for cause. In the Committee's view, Peck's "voluntary refusal of the assignment to the position of Vice President of Quality Control and Business Improvement" was a "deliberate or intentional refusal to perform any material duties and obligations of [his] employment." J.A. 95-96. Peck administratively appealed the decision, but the Committee again denied his claim.

Peck separately sought benefits under SELEX's severance policy. *See* J.A. 79. Under the policy, SELEX agreed to provide "separation benefits" to eligible full-time employees "whose employment terminates due to lack of work, elimination of position, or change of control." *Id.* The policy further provided that an employee discharged for one of the three enumerated reasons would nonetheless be ineligible for severance pay if terminated for cause. *Id.* For eligible high-level employees who had worked at the Company for over ten years, SELEX would pay nine months of severance benefits under the Policy. In response to Peck's claim under the severance policy, SELEX stated that he was ineligible for

severance pay "[g]iven the circumstances of the termination of [his] employment." J.A. 92.

Peck filed a suit against SELEX in D.C. Superior Court. He raised three contract claims: one for severance pay in the amount of $151,549; a second for deferred-compensation benefits in the amount of $57,020; and a third for relocation expenses in the amount of $21,195. SELEX removed the case to federal district court and moved to dismiss Peck's deferred-compensation claim, arguing that the claim was preempted by the Employee Retirement Income Security Act (ERISA). In response, Peck voluntarily dismissed the claim and, with leave from the district court, filed an amended complaint that added the Key Employee Deferred Compensation Plan as a defendant and pled the deferred-compensation claim as one arising under ERISA.

SELEX moved for summary judgment on Peck's deferred-compensation claim, and Peck moved for summary judgment on all three of his claims. The district court granted SELEX's motion, holding that the Plan's Administrative Committee reasonably determined that Peck's refusal to transfer positions constituted cause for termination, thus rendering Peck ineligible for deferred compensation under the Plan. *See Peck v. SELEX Sys. Integration, Inc.* (*Peck I*), 172 F. Supp. 3d 171, 176-78 (D.D.C. 2016). The court also denied Peck's motion for reconsideration. *See Peck v. SELEX Sys. Integration, Inc.* (*Peck II*), 270 F. Supp. 3d 107, 116-17 (D.D.C. 2017).

As for the remaining two claims, the district court found that there were genuine issues of material fact precluding summary judgment, so the parties proceeded to a bench trial. Following trial, the district court ruled in Peck's favor on the

claim for relocation expenses. *Peck II*, 270 F. Supp. 3d at 115-16. That claim is not at issue in the appeal now before us.

The district court entered judgment in favor of SELEX on the severance claim. The court reasoned that, to collect payment under SELEX's Separation Policy, Peck needed to show that he was terminated for one of the three enumerated reasons: "lack of work, elimination of position, or change in control." *Id.* at 115. The parties agreed that the sole issue in the circumstances presented was whether Peck was discharged due to the elimination of a position. The district court found that the evidence "clearly show[ed] that Peck was terminated because he would not return to Kansas to serve in a different capacity, not because SELEX was eliminating the marketing position in D.C." *Id.* As a result, the court held that Peck had not shown he was entitled to severance pay. *Id.*

## II.

On appeal, Peck challenges the district court's entry of judgment against him on his deferred-compensation and severance-pay claims. We agree with Peck as to deferred compensation but disagree as to severance pay.

## A.

Peck argues that SELEX acted unreasonably in determining that he was terminated for cause and was thus ineligible to receive deferred-compensation benefits. The company responds that Peck's refusal to accept the offer of a new position amounted to cause for his termination under the terms of its deferred-compensation plan. We agree with Peck's understanding: his refusal to accept a transfer to a new position could not reasonably be considered cause for terminating him.

1.

At the outset, the parties disagree about the standard of review governing our consideration of Peck's challenge. We generally review de novo the district court's determination of an ERISA claim on summary judgment. *Marcin v. Reliance Standard Life Ins. Co.*, 861 F.3d 254, 262 (D.C. Cir. 2017). We therefore apply the same standard that governed the district court's review of the ERISA plan administrator's challenged determination—here, the determination by the Plan's Administrative Committee to deny Peck benefits. *See id.* The courts of appeals, though, have adopted differing positions on the standard a district court should apply when reviewing a determination made by an administrator of a top-hat plan like the one at issue here. For the following reasons, we have no need in this case to decide between the competing approaches.

By way of background, ERISA is silent on the standard that courts should use when reviewing a benefits determination made by the administrator of an ERISA plan. The Supreme Court addressed that issue in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). Relying on principles from trust law, the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. If a plan grants the administrator or fiduciary such authority, "a deferential standard of review [is] appropriate." *Id.* at 111. We have described that "deferential" standard as review for "reasonableness." *Wagener v. SBC Pension Benefit Plan— Non Bargained Program*, 407 F.3d 395, 402 (D.C. Cir. 2005).

The courts of appeals have reached different conclusions on whether *Firestone*'s deferential standard of review applies

in the case of a top-hat plan that grants the plan administrator discretion to interpret the plan's terms. Some courts have declined to apply *Firestone*'s deferential standard in that context because of certain unique qualities of top-hat plans, including their general exemption from ERISA's fiduciary requirements. *See Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006); *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 442-44 (3d Cir. 2001). Other courts apply *Firestone*'s deferential standard to top-hat plans that vest administrators with discretion to interpret the plan's provisions. *See Comrie v. IPSCO, Inc.*, 636 F.3d 839, 842 (7th Cir. 2011); *Sznewajs v. U.S. Bancorp Amended & Restated Supp. Benefits Plan*, 572 F.3d 727, 733-34 (9th Cir. 2009), *overruled in part on other grounds by Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673-74 (9th Cir. 2011); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 108 (2d Cir. 2008). It bears noting that, while the courts expressly disagree about the governing standard, *e.g., Comrie*, 636 F.3d at 842, the extent to which the competing approaches result in a practical difference may be open to some question: even the courts to reject *Firestone*'s deferential standard still ultimately ask "whether the Plan's decision was reasonable." *Craig*, 458 F.3d at 752; *see Goldstein*, 251 F.3d at 444.

At any rate, we have no need in this case to explore the varying approaches or to choose between them. As we explain next, even assuming *Firestone*'s deferential standard of review applies in the context of this case, SELEX's denial of Peck's claim for deferred compensation still cannot be sustained as a reasonable determination under the company's plan.

2.

Under SELEX's Key Employee Deferred Compensation Plan, an employee's entitlement to benefits vested after an

initial period of five years from the Plan's establishment. But an employee's right to deferred compensation vested before five years if he was terminated without cause. Because Peck was discharged within five years of the Plan's establishment, his eligibility for benefits turns on whether his termination could be considered one for "cause" under the terms of the Plan.

"Cause" for termination, the Plan provides, arises from an employee's "habitual neglect of or deliberate or intentional refusal to perform any of his or her material duties and obligations of his or her employment (including compliance with the Company's Code of Conduct) with the Company." J.A. 59. The Plan's Administrative Committee determined that Peck's refusal to accept the quality-control position afforded cause for terminating him under that definition. While the company offered no explanation of its interpretation at the time of the decision, it now explains that Peck was an at-will employee without any employment contract assigning him to a specific position or specific duties. Thus, the company maintains, the "material duties and obligations of [Peck's] employment . . . with the Company" amounted to whatever duties he was directed to perform, including the direction to assume an entirely different position, with entirely different duties, in an entirely different locale (Kansas instead of Washington, D.C.). And by refusing to accept the new position, SELEX asserts, Peck engaged in a "refusal to perform" the "material duties and obligations" of his employment with the company.

SELEX's interpretation of the Plan cannot be correct. Its reading is incompatible with the terms of the Plan and upsets the parties' reasonable expectations about the duties of a person's employment with the company. *See Wagener*, 407 F.3d at 404-05; *see also Shelby Cty. Health Care Corp. v. S.*

*Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 934 (6th Cir. 2000) ("[A] plan administrator must adhere to the plain meaning of [a plan's] language, as it would be construed by an ordinary person."). Under SELEX's interpretation, an at-will employee's "material duties and obligations" would be entirely unconnected to his or her current position. So a high-level manager, for instance, would give the company cause to terminate her if she declined to move across the country to perform an entirely different (and less desirable) role (perhaps in a much lower-ranking position on the organizational chart).

Although the literal terms "employment with the company" in theory could encompass any position at all in the company, the surrounding words foreclose that unnatural reading. The phrase "material duties and obligations of [a person's] employment" naturally refers to the set of responsibilities assigned to an employee. And those responsibilities are necessarily tied to an employee's position with the company. To avoid for-cause dismissal, then, an employee cannot refuse to fulfill the duties and obligations assigned to her, which means she cannot refuse to carry out the duties of the position she holds. But she does not "refuse to perform the material duties and obligations of her employment with the company" if she declines to accept materially different duties and obligations.

Peck, consequently, did not refuse to perform the material duties and obligations of his employment with the company. After SELEX determined that he was unlikely to succeed in the D.C. marketing position he held, he was offered the opportunity to assume a different position in the quality-control department in Kansas. The offer involved a new set of "material duties and obligations." In his marketing position, he oversaw all marketing and sales for the U.S. market, and he had

no duties related to quality control. The Kansas position, by contrast, involved supervising a team tasked with improving the quality of SELEX's products and services. Peck's refusal to accept that new position was not a "refusal to perform the material duties and obligations of his employment."

SELEX argues that the parenthetical clause in the "cause" definition—i.e., "material duties and obligations of his or her employment *(including compliance with the Company's Code of Conduct)*"—shows that a person's duties go beyond her specific position. The parenthetical clause, however, establishes only that an employee's material duties and obligations include adherence to the Code of Conduct. The fact that the Code of Conduct applies to all positions in the company does not somehow expand a particular employee's scope of assignable duties to encompass the duties of every position throughout the company.

Finally, SELEX, in a footnote in its brief, suggests that we should defer to the Administrative Committee's finding that Peck waived his deferred-compensation claim when he voluntarily dismissed his state-law claim raising that issue (and substituted the ERISA claim we now consider). We decline to consider SELEX's conclusory assertion of waiver, offered without supporting argument, discussion, or legal authority. *See Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997).

In sum, we hold that Peck did not refuse to perform the duties of his employment with the company when he declined to assume the different duties of a different position in a different location. SELEX's termination of him therefore could not have reasonably qualified as a termination for cause within the meaning of the Plan, meaning that Peck is entitled to deferred compensation under the Plan. *See Wagener*, 407

F.3d at 405 ("Plan fiduciaries cannot claim deference for an interpretation of the Plan that . . . contradicts the Plan's plain language.").

## B.

We turn now to Peck's claim for severance pay under SELEX's Separation Policy. The Policy provided for severance pay to a full-time employee "whose employment terminates due to lack of work, elimination of position, or change of control." J.A. 79. Peck asserts an entitlement to severance pay based solely on the second of those grounds: he contends that SELEX terminated him because it eliminated his marketing position.

The district court concluded otherwise. Following a bench trial, the district court found that "Peck was terminated because he would not return to Kansas to serve in a different capacity, not because [SELEX] was eliminating the marketing position in D.C." *Peck II*, 270 F. Supp. 3d at 115. To prevail on his claim for severance pay, then, Peck needs to show that the district court erred in finding that his termination resulted from his refusal to accept the new position in Kansas and not from an elimination of his position in D.C. *See Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1293-94 (D.C. Cir. 2010) (factual findings not set aside unless "clearly erroneous").

Peck, however, at no point contests the district court's finding that he was terminated because he refused to accept the quality-control position and not because of the elimination of his position. Instead, he argues that the district court erred in finding that SELEX did not eliminate his marketing position. Peck contends that the marketing position in fact was eliminated. But that argument, even if persuasive, does not suffice to establish Peck's entitlement to severance pay. Regardless of whether the company eliminated Peck's

marketing position, he would still need to show that he was terminated because of the position's elimination rather than solely because of his refusal to accept the quality-control position. Yet Peck raises no challenge to the district court's finding that his termination resulted from his refusal to accept the new position and not from an elimination of his marketing position. Indeed, SELEX, in its brief, specifically pointed to Peck's failure to raise such a challenge, but Peck still did not address the issue in his reply brief.

Peck alternatively argues that SELEX should be estopped from claiming that Peck was terminated for a reason other than the elimination of position. Prior to the litigation, Peck contends, SELEX rested its denial of severance benefits on the ground that he refused to transfer to the quality-control position. According to Peck, SELEX now takes what he perceives to be a different position: that he is ineligible for severance pay because his termination was not due to an elimination of his position.

Peck's argument lacks merit. The doctrine of estoppel can prelude a party from switching positions on an issue if it would prejudice the opposing party. *See Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 126 (D.C. 2014); *cf. Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980) (discussing the concept of judicial estoppel). SELEX, however, has not changed its tune on the reason for denying Peck severance pay. In an October 2012 letter, SELEX's CEO advised Peck that his "employment with SELEX is terminated" "because you have continued to refuse your assignment to the position of Vice President of Quality Control and Business Improvement." J.A. 92. SELEX continues to maintain that Peck was terminated solely because he refused to accept the new position. Peck's estoppel argument thus cannot carry the day.

15

\* \* \* \* \*

For the foregoing reasons, we vacate the district court's grant of summary judgment to SELEX on Peck's deferred-compensation claim and remand for entry of judgment in Peck's favor. We affirm the district court's judgment in SELEX's favor on Peck's claim for severance pay.

*So ordered.*